# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

Case No. _____

| | |
|---|---|
| JUSTIN WIESERT, ISAAC ALEXANDER, PRESTON SPENCE, DAVID SCHWEIT, CARTER JONES, COTIES CUTHBERTSON, DAN TOTH, RYAN SPANICH, DANIEL FORMECK, JOSEPH PEREZ, BREANNA BRYCE, MELANIE BLAKE, MAKENNA ORLANDO, DANA FRENCH, ERIC RICONO, MATT MCCALLAN, MICHAEL ARROWOOD, ZACK CHOATE, JACK LUTZ, BRANDON QUEEN, JOEY PHILYAW, DAVID ANDERSON, ALEX FURTADO, AMBER-LYNN STINSON, CHRIS CHANG, DALLAS JOYCE, JOSHUA HEFFERMAN, KEVIN SHANNON, JUSTIN GRIGGS, MALIK CONSTANTINE, JENDY RODRIGUEZ, MARIANO DOBLE, TYLER PROVANCE, JOSH KATZ, BRANDON ROSE, CORDELIA STARNES, MATT DREXLER ELIJAH FINCHER, LAURA ASHLEY BROOKS, CHRISTOPHER TROTTA, BRIAN RANSON, KEVIN LOWTHER, DAVID STELZ, DANIEL NUCKOLLS, NATALIE HITSELBERGER, KYLE NACHTERGAELE, ANDREW SMITH, CHRISTIAN SIMMONS, <br><br>AND<br><br>MOVEMENT MORTGAGE, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERCONTINENTAL CAPITAL GROUP, INC.,<br><br>    Defendant. | **COMPLAINT FOR DECLARATORY RELIEF** |

COME NOW Plaintiffs Justin Wiesert, Isaac Alexander, Preston Spence, David Schweit, Carter Jones, Coties Cuthbertson, Dan Toth, Ryan Spanich, Daniel Formeck, Joseph Perez, Breanna Bryce, Melanie Blake, Makenna Orlando, Dana French, Eric Ricono, Matt McCallan, Michael Arrowood, Zack Choate, Jack Lutz, Brandon Queen, Joey Philyaw, David Anderson, Alex Furtado, Amber-Lynn Stinson, Chris Chang, Dallas Joyce, Joshua Hefferman, Kevin Shannon, Justin Griggs, Malik Constantine, Jendy Rodriguez, Mariano Doble, Tyler Provance, Josh Katz, Brandon Rose, Cordelia Starnes, Andrew Smith, Matt Drexler, Elijah Fincher, Laura Ashley Brooks, Christopher Trotta, Brian Ranson, Kevin Lowther, David Stelz, Daniel Nuckolls, Natalie Hitselberger, Kyle Nachtergaele, Christian Simmons (collectively, the "Individual Plaintiffs") and Movement Mortgage, LLC ("Movement") (with the Individual Plaintiffs and Movement together being referred to as "Plaintiffs"), by counsel, pursuant to 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1332, hereby state the following as their Complaint for Declaratory Judgment against Defendant Intercontinental Capital Group, Inc. ("ICG"):

## PARTIES

1. The Individual Plaintiffs are former employees of ICG.

2. The following Individual Plaintiffs are residents of North Carolina: Justin Wiesert, Isaac Alexander, Preston Spence, David Schweit, Carter Jones, Coties Cuthbertson, Dan Toth, Ryan Spanich, Daniel Formeck, Joseph Perez, Breanna Bryce, Melanie Blake, Makenna Orlando, Dana French, Eric Ricono, Matt McCallan, Michael Arrowood, Zack Choate, Jack Lutz, Brandon Queen, Joey Philyaw, David Anderson, Alex Furtado, Amber-Lynn Stinson, Chris Chang, Dallas Joyce, Joshua Hefferman, Kevin Shannon, Justin Griggs, Malik Constantine, Jendy Rodriguez, Mariano Doble, Tyler Provance, Josh Katz, Brandon Rose, Cordelia Starnes, Andrew Smith, Matt Drexler, Elijah Fincher, and Christian Simmons.

3. The following Individual Plaintiffs are residents of South Carolina: Laura Ashley Brooks, Christopher Trotta, Brian Ranson, Kevin Lowther, David Stelz, Daniel Nuckolls, Natalie Hitselberger, and Kyle Nachtergaele.

4. Movement Mortgage, LLC is headquartered at 8024 Calvin Hall Road, Fort Mill, South Carolina 29707.

5. ICG is a company headquartered at 265 Broadhollow Road, Melville, New York 11747.

## JURISDICTION

6. This Court has personal jurisdiction over ICG in this matter pursuant to N.C.G.S. § 1-75.4(1)(d), because, among other things, ICG has at all relevant times engaged in substantial, continuous, and systematic business activity within the State of North Carolina.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties. ICG is a citizen of New York, and Plaintiffs are citizens of North Carolina and South Carolina. The amount in controversy far exceeds $75,000 because the object of the claims being brought by ICG against Plaintiffs (as explained in greater detail below) underlying this action are based upon the alleged breach of (and/or inducement to breach) and tortious interference with approximately 50 separate employment agreements, as well as purported misappropriation of ICG's confidential information.

8. There is an immediate and actual controversy between the parties, as further described herein, pursuant to 28 U.S.C. §§ 2201 and 2202. The actual controversy concerns the enforceability of the forum selection clauses in agreements purportedly entered into by the

Individual Plaintiffs.[1] ICG has unequivocally declared its intent to file suit regarding the invalid and overbroad employment agreements against all Plaintiffs.

## VENUE

9. Venue is proper in the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim asserted herein occurred in this District.

## FACTS

### MOVEMENT MORTGAGE, LLC

10. Movement was established in 2008 by its current Chief Executive Officer, Casey Crawford. Since its founding, Crawford and his team have built Movement into a national leader in the mortgage loan origination industry. Movement's unique corporate culture places great emphasis on employee and customer satisfaction and engagement, as evidenced by (among other things) the company's various philanthropic and community programs and initiatives.

11. In keeping with its corporate culture and core values, Movement's business model is relationship-driven. Specifically, Movement's focus since its founding has been centered around its mortgage loan officers who build personal relationships with referral sources—such as realtors, commercial developers, etc.—who refer potential clients to Movement for financing. Movement's customer-centric approach creates repeat clients who also become referral sources.

12. Movement's approach has been very successful. Movement has grown from a handful of employees since its founding in 2008 to currently employing more than 5,000 individuals across the United States.

---

[1] For the avoidance of doubt, no Plaintiff agrees that any of the Agreements at issue are valid or enforceable in any respect.

### INTERCONTINENTAL CAPITAL GROUP, INC.

13. ICG was founded by its current Chief Executive Officer, Dustin DiMisa. At its peak, ICG employed approximately 1,400 employees in several offices across the United States. ICG operated (and/or operates) through various named entities, including Veterans Community Home Loans, Own It Home Loans, and Fellowship Home Loans.

14. In addition to a relationship-driven business line like Movement, ICG also has a business line focused on what is referred to in the industry as direct-to-consumer lending. This model is focused on sending marketing materials directly to potential customers who then contact ICG about a potential home purchase or refinance. The targets of the marketing efforts come primarily from lead aggregation companies who sell the potential leads to ICG in bulk.

15. The direct-to-consumer model becomes less profitable as interest rates rise. This is because rising rates significantly reduce the financial incentives to purchase, sell, or refinance a home.

16. Rising inflation and other market conditions in 2021 caused the Federal Reserve to begin signaling multiple interest rate hikes for 2022. This was bad news for ICG.

### MOVEMENT AND ICG DISCUSS A POTENTIAL SALE OF ICG'S DIRECT-TO-CONSUMER LINE

17. In or about November 2021, Movement and ICG began discussions about Movement possibly purchasing ICG's direct-to-consumer line of business. Although all signs were (and still very much are) pointing to a **significant** decrease in profitability in direct-to-consumer lending over the next several years, Movement saw having a direct-to-consumer division as a possible long-term investment.

18. As a part of these discussions, ICG and Movement entered into the Non-Disclosure Agreement attached as Exhibit 1 on November 18, 2021, which contains a mandatory North Carolina forum selection clause.

19. ICG's conduct during the negotiations was inexplicable. ICG's representatives repeatedly and consistently assured Movement that ICG was interested in seriously pursuing a possible deal. ICG, however, refused to provide Movement with basic financial and performance data necessary for Movement to evaluate ICG's direct-to-consumer business.

20. Movement made numerous requests for this information; in response, ICG would assure Movement that the data was coming (citing to various excuses), while never actually providing said data.

## ICG BECOMES A RAPIDLY SINKING SHIP

21. By the fourth quarter of 2021, business conditions at ICG had very rapidly deteriorated. Due to a long series of poor and inexplicable management decisions by DiMisa—including, but not limited to, the slashing of ICG's lead budget (which is a direct-to-consumer business's life blood)—ICG's financial condition and overall outlook was worsening by the day.

22. By the end of December 2021, business conditions at ICG had forced the company to lay off approximately half of its employees and to shutter most of its offices besides its Charlotte, North Carolina branch.

23. To say that employee morale was low would be an understatement. It was evident to everyone at ICG that the writing was on the wall. Many of the remaining employees had begun searching for new employment and many left ICG in search of greener pastures during this time period.

24. The remaining ICG employees saw the potential deal with Movement as a lifeline and viewed a transaction with Movement as necessary—otherwise, it appeared doubtful that ICG would remain a viable going concern for long.

### ICG INEXPLICABLY PULLS THE PLUG ON THE DEAL DISCUSSIONS

25. In mid-February 2022, with no explanation whatsoever and without having ever provided Movement with the basic financial and performance data ICG had repeatedly promised (which Movement needed to make an offer to ICG), ICG informed Movement that the deal discussions were concluded and that ICG would not be moving forward.

26. Abandoning the sinking ship, a number of ICG's employees decided to leave ICG and were ultimately hired by Movement.

### PLAINTIFFS' AGREEMENTS WITH ICG

27. The Individual Plaintiffs are former employees of ICG who began their respective employment with ICG on varying dates. Each Individual Plaintiff previously worked for ICG in North Carolina.

28. With the exception of Wiesert, the Individual Plaintiffs entered into their respective employment agreements (the "Agreements") with ICG on various dates. Copies of the Agreements are attached hereto as Exhibits 2 to 48. The Agreements are between ICG, its parents, subsidiaries, successors and assigns, (referred to in the Agreements as "ICG," "Employer" or "Company") and the Individual Plaintiffs (referred to as "Employee" in the Agreements).

29. All of the Agreements contain a forum selection clause.

30. The Agreements for 25 of the Individual Plaintiffs (Furtado, Stinson, Queen, Chang, Toth, Nuckolls, Anderson, Stetzl, Lutz, Philyaw, Perez, Hefferman, Griggs, Lowther, Shannon, Nachtengale, Orlando, Doble, McCallan, Blake, Arrowood, Hitselberger, Spence,

7

Spanich, and Choate) contain a forum selection clause purporting to consent to a forum of either New York or North Carolina.

31. The Agreements for 22 of the Individual Plaintiffs (Alexander, Constantine, Smith, Rose, Bryce, Starnes, Joyce, French, Schweit, Fincher, Ricono, Rodriguez, Katz, Provance, Ranson, Jones, Brooks, Trotta, Cuthbertson, Forneck, Drexler, and Simmons) contain a forum selection clause purporting to mandate that any litigation between the parties may only be brought in New York.

### ICG PREPARES TO BRING LITIGATION AGAINST ALL PLAINTIFFS

32. On March 28 and 29, 2022, ICG sent a letter to each Plaintiff unequivocally stating that ICG will be filing suit against each of them to include claims for allegedly breaching, inducing others to breach, and/or tortiously interfering with the Agreements between the Individual Plaintiffs and ICG, as well as the misappropriation of ICG's confidential information. Copies of the letters sent by ICG to the Individual Plaintiffs are attached as Exhibits 49 to 96. By virtue of these claims, ICG intends to enforce the forum selection clauses contained in the Agreements against all Plaintiffs (without regard as to whether any particular Plaintiff is or is not a signatory to an Agreement).

### THE FORUM SELECTION CLAUSES IN THE AGREEMENTS ARE VOID

33. N.C. Gen. Stat. § 22B-3 provides as follows:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

34. The Individual Plaintiffs entered into their Agreements in North Carolina. As such, N.C. Gen. Stat. § 22B-3 applies, rendering void the forum selection clause in the Agreements to the extent those provisions require or permit any litigation against the Plaintiffs to occur in any forum outside of North Carolina.

35. By extension, the forum selection clause is also void as to any claim against Movement premised upon a breach of the Individual Plaintiffs' Agreements. Additionally, Section 10 of the Non-Disclosure Agreement contains a forum selection clause mandating that "[a]ny legal suit, action, or proceeding relating to this Agreement must be instituted in the federal or state courts located in Charlotte, Mecklenburg County, North Carolina."

36. Accordingly, any suit or proceeding brought by ICG against any Plaintiff must be brought in North Carolina.

## CAUSE OF ACTION FOR DECLARATORY RELIEF

37. The allegations in paragraphs 1 through 36 are hereby realleged and incorporated as though fully set forth herein.

38. Pursuant to N.C. Gen. Stat. § 22B-3, the forum selection clauses in the Agreements are void as a matter of law.

39. Nevertheless, ICG is actively seeking to enforce those provisions.

40. An actual, immediate controversy exists between ICG and Plaintiffs with respect to enforcement of the Agreements, specifically including (but not limited to) the forum selection clauses in the Agreements.

41. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to make binding adjudications of right and declare the rights of the parties with respect to the forum selection clauses in the Agreements, including their future rights.

42. Plaintiffs have no adequate remedy at law.

**WHEREFORE,** Plaintiffs hereby respectfully request that this Court grant them the following relief:

(A) Issue an Order and Judgment declaring that the forum selection clause in the Agreements are void and unenforceable;

(B) Order any relief necessary to implement or enforce the declaratory judgment or judgments, including temporary, preliminary, and/or permanent injunctive relief; and

(C) Award such other further relief as this Court deems appropriate.

Respectfully submitted this 6th day of April 2022.

| | |
|---|---|
| *s/ Kristine M. Sims*<br>Kristine M. Sims<br>N.C. Bar No.. 26903<br>ksims@constangy.com<br><br>CONSTANGY, BROOKS,<br>SMITH & PROPHETE, LLP<br>100 N. Cherry St.<br>Suite 300<br>Winston-Salem, NC 27101<br>(336) 721-1001 (phone)<br><br>Counsel for Justin Wiesert, Isaac Alexander, Preston Spence, David Schweit, Carter Jones, Coties Cuthbertson, Dan Toth, Ryan Spanich, Daniel Formeck, Joseph Perez, Breanna Bryce, Melanie Blake, Makenna Orlando, Dana French, Eric Ricono, Matt McCallan, Michael Arrowood, Zack Choate, Jack Lutz, Brandon Queen, Joey Philyaw, David Anderson, Alex Furtado, Amber-Lynn Stinson, Chris Chang, Dallas Joyce, Joshua Hefferman, Kevin Shannon, Justin Griggs, Malik Constantine, Jendy Rodriguez, Mariano Doble, Tyler Provance, Josh Katz, Brandon Rose, Cordelia Starnes, Andrew Smith, Matt Drexler, Elijah Fincher Laura Ashley Brooks, Christopher Trotta, Brian Ranson, Kevin Lowther, David Stelz, Daniel Nuckolls, Natalie Hitselberger, and Kyle Nachtergaele | *s/ William M. Mayberry*<br>William M. Mayberry<br>N.C. Bar No. 20572<br>bill.mayberry@troutman.com<br><br>TROUTMAN PEPPER<br>HAMILTON SANDERS LLP<br>301 S. College Street<br>34th Floor<br>Charlotte, NC 28202<br>(704) 998-4106 (phone)<br><br>Counsel for Movement Mortgage, LLC |

11

Case 3:22-cv-00147-RJC-DCK   Document 1   Filed 04/06/22   Page 11 of 11