# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-147-RJC-DCK

| | |
|---|---|
| MOVEMENT MORTGAGE LLC, et al., | ) |
| Plaintiffs, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| INTERCONTINENTAL CAPITAL GROUP, INC., | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Matt Drexler And Laura Ashley Brooks' Motion To Dismiss" (Document No. 19). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

## I. BACKGROUND

The factual and procedural background to this case is described in detail in the undersigned's December 9, 2022 Order (Document No. 26) denying Counterclaim Plaintiff Intercontinental Capital Group, Inc.'s ("Intercontinental") "…Motion For Leave To Take Early Written Discovery" (Document No. 23). The undersigned will not repeat all of the details in this Memorandum and Recommendation, but instead directs attention to that Order. See (Document No. 26). Generally, though, the case involves a dispute between mortgage lending companies following a failed negotiation for Plaintiff Movement Mortgage ("Movement") to purchase the direct-to-consumer lending division of Intercontinental. (Document No. 1, p. 2). Movement contends that Intercontinental was a "rapidly sinking ship," and employees were seeking new

employment on account of widespread layoffs at Intercontinental.  Id. at p. 6.  Intercontinental, on the other hand, contends that Movement and former employees at Intercontinental schemed to poach employees from Intercontinental and recruit them to Movement, "the effect of which was to destroy [Intercontinental's] valuable consumer direct business."  (Document No. 5, p. 13).

Intercontinental alleges in its "…Answer, Affirmative Defenses, And Counterclaim" that Matt Drexler ("Drexler"), former Branch Manager of Intercontinental's Charlotte branch, and Laura Ashley Brooks ("Brooks"), former Chief Marketing Officer of Intercontinental, "coordinated with Movement and one another to recruit, solicit, and transition nearly all of [Intercontinental's] Charlotte Branch to Movement without any compensation to [Intercontinental]."  Id. at p. 28.  Specifically, Intercontinental alleges that "Drexler made false statements to the Charlotte Branch employees that [Intercontinental] planned to close the Charlotte Branch and that those employees were going to lose their jobs at [Intercontinental]."  Id. at p. 30.

Plaintiff Movement, along with a number of former Intercontinental employees – two of whom included Matt Drexler and Laura Ashley Brooks – filed suit against Intercontinental on April 6, 2022.  See (Document No. 1).  The "Complaint For Declaratory Relief" (Document No. 1) asks the Court to declare that a forum selection clause in the individual Plaintiffs' employment agreements with Intercontinental was invalid – essentially, seeking a declaration from the Court that the only suitable forum for litigation related to the failed acquisition by Movement of Intercontinental's direct-to-consumer lending division is North Carolina.

As stated in the Court's December 9, 2022 Order,

> [o]n May 3, 2022, Intercontinental filed "Intercontinental Capital Group, Inc.'s Answer, Affirmative Defenses, And Counterclaim" (Document No. 5).  Intercontinental alleged six counterclaims:  (1) for breach of contract against Movement;  (2) for breach of contract against Matt Drexler…;  (3) for tortious interference with contract against Movement;  (4) for breach of fiduciary duty against Laura

> Ashley Brooks…' (5) for breach of fiduciary duty against Drexler; and (6) for unfair and deceptive trade practices against Movement. See id. at pp. 35-43. On June 10, 2022, Movement filed "Movement Mortgage, LLC's Answer, Defenses, And Affirmative Defenses To Intercontinental Capital Group, Inc.'s Counterclaim" (Document No. 18). That same day, Plaintiffs and Counterclaim Defendants Drexler and Brooks filed "Matt Drexler And Laura Ashley Brooks' Motion To Dismiss" (Document No. 19) seeking to dismiss the breach of fiduciary duty claims against both Brooks and Drexler.

(Document No. 26, p. 3). "Intercontinental Capital Group, Inc.'s Response In Opposition To Matt Drexler's And Laura Ashley Brooks' Motion To Dismiss" (Document No. 21) was filed June 24, 2022. Drexler and Brooks' "Reply In Support Of Matt Drexler's And Laura Ashley Brooks' Motion To Dismiss" (Document No. 22) was filed July 1, 2022.

By the pending motion, Drexler and Brooks contend that the breach of fiduciary duty counterclaims against them should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).[1] See (Document No. 19). They argue first that "neither Brooks nor Drexler owed fiduciary duties" to Intercontinental, and second, that "neither Brooks nor Drexler were an officer or director of [Intercontinental], which would otherwise be required to create fiduciary duties to [Intercontinental]." (Document No. 20, p. 2).

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A

---

[1] Notably, Drexler has not moved to dismiss or answered the breach of contract counterclaim alleged against him.

complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

The success of Brooks and Drexler's motion depends on a choice of law question. And, in turn, the sufficiency of Intercontinental's breach of fiduciary duty counterclaim against Brooks and Drexler depends upon whether it is adequately alleged in Intercontinental's counterclaims that

Brooks or Drexler owed any fiduciary duty to Intercontinental. The undersigned will analyze Counterclaim Defendants Brooks and Drexler's arguments for dismissal of the breach of fiduciary duty counterclaims against them below.

## I. Choice of Law Analysis

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 599-600 (4th Cir. 2004). Ordinarily, the *lex loci* choice of law rule applies to "most tort claims" in North Carolina. Worley Claims Servs., LLC v. Jefferies, 429 F. Supp. 3d 146, 157 (W.D.N.C. 2019) (citing Boudreau v. Baughman, 368 S.E.2d 849, 853-54 (1988)). Pursuant to the *lex loci* rule, for "matters affecting the substantial rights of the parties," the rule dictates that the "law of the state" where "the injury occurred" is the law that "governs resolution" of the claim. Boudreau, 368 S.E.2d at 854.

However, *lex loci* is not the choice of law rule for *every* tort claim. "Under North Carolina law, claims of breach of fiduciary duty are governed by the 'internal affairs doctrine,' which applies the law of the state of incorporation to claims related to corporate standards of care." Worley Claims Servs., LLC, 429 F. Supp. 3d at 159 (citing Bluebird Corp. v. Aubin, 657 S.E.2d 55 (N.C. Ct. App. 2008)). As background, the internal affairs doctrine "is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." Edgar v. MITE Corp., 457 U.S. 624, 645 (1982). Furthermore, where an individual who is the subject of a breach of fiduciary duty claim is "bound up" in the company's internal affairs, some courts have found that the internal affairs doctrine is the choice of law rule

that is "more appropriate than lex loci." Worley, 429 F. Supp. 3d at 160 (internal quotations and citations omitted). Indeed, a case from this district has previously found that where defendants were "corporate insiders" and "high-level employees," the internal affairs doctrine was the applicable choice of law rule. Id. (applying the internal affairs doctrine to both breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims). In the Worley case, the court applied the internal affairs doctrine to determine which state's law to apply without first determining "who is a fiduciary and whether fiduciary duties have been breached." Id.

In this case, the Court finds that while there might be some argument that *lex loci* should apply as the choice of law rule for the breach of fiduciary duty counterclaims, on balance, the internal affairs doctrine seems the more appropriate choice. Brooks and Drexler argue that there should be some distinction—indeed, a different application of the internal affairs doctrine in North Carolina—when defendants are mere *employees* versus a scenario in which they are alleged to be *officers, directors, or shareholders* or otherwise meet North Carolina requirements for being a fiduciary.[2] Their motion contends that "[e]mployees...do not owe fiduciary duties to their employers in North Carolina," and therefore, "to the extent [Intercontinental] asserts that Brooks and Drexler breached fiduciary duties owed to [Intercontinental] by virtue of them having been employees…the claims fail as a matter of law." (Document No. 20, p. 4). Furthermore, they argue that "[i]n North Carolina, the choice of law rule for a breach of fiduciary duty claim against a former employee is the *lex loci* test." Id. at p. 5.

---

[2] As Intercontinental points out, Brooks and Drexler's argument in favor of applying the *lex loci* test such that North Carolina law governs the breach of fiduciary duty counterclaims rather than applying the internal affairs doctrine (which would result in application of New York law) is potentially self-serving. As Intercontinental contends, Brooks and Drexler argue for application of the *lex loci* test "[i]n an effort [to] avoid application of New York law…presumably because it is less favorable to them than North Carolina law." (Document No. 21, p. 7). Brooks and Drexler argue that "[e]mployees are practically never fiduciaries of their employers." (Document No. 20, p. 5) (citations omitted).

Respectfully, the undersigned disagrees with this approach. Pursuant to Brooks and Drexler's argument, the Court would have to draw a conclusion about whether Brooks and Drexler were fiduciaries and whether they owed fiduciary duties to Intercontinental before conducting a choice of law analysis. Such an analysis would be premature—particularly when applying the choice of law rules informs which state's law decides those issues. Brooks and Drexler, therefore, attempt to put the cart before the horse. It does not make sense to apply a choice of law rule differentially depending on who the defendant is.[3] Instead, the rule should be applied uniformly, particularly when the universe of facts is not yet known at the motion to dismiss stage and where defendants are evidently "senior-level, managerial employees who are involved in the internal affairs of a corporation." (Document No. 21, p. 7).

Intercontinental alleges in its counterclaims that Drexler was "Branch Manager" of the Charlotte Branch of Intercontinental, and he "occupied a position of trust and confidence…[he] had access to and was entrusted with voluminous confidential information belonging to [Intercontinental]." Id. at p. 41. Furthermore, as to Brooks, Intercontinental alleges that she was "Chief Marketing Officer" of Intercontinental, "occupied a position of trust and confidence," and "had access to and was entrusted with voluminous confidential information belonging to" Intercontinental." Id. at p. 39. The undersigned finds that Intercontinental alleged sufficient facts to show that Brooks and Drexler were "high-level employees" and "corporate insiders" that were "bound up" in Intercontinental's internal affairs such that application of the internal affairs doctrine as North Carolina's choice of law rule is appropriate. Worley, 429 F. Supp. 3d at 160. Thus, as

---

[3] Indeed, following Brooks and Drexler's logic, the Court would be required to apply the internal affairs doctrine to determine which state's law governs the breach of fiduciary duty counterclaim against Brooks, as a corporate officer, and potentially the *lex loci* rule to determine the law governing the breach of fiduciary duty counterclaim against Drexler, a "Branch Manager." See (Document No. 5, p. 14). That differential application of choice of law rules is impractical.

Intercontinental states, "[b]ecause [Intercontinental] is incorporated in New York, the internal affairs doctrine mandates that New York law applies to [Intercontinental's] breach of fiduciary [duty] claims." (Document No. 21, p. 7); see also (Document No. 5, p. 2).

## II. Breach of Fiduciary Duty Counterclaims

"To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 241 (2d Cir. 2020) (quoting United States Fire Ins. Co. v. Raia, 942 N.Y.S.2d 543, 545 (N.Y. App. Div. 2012)).

New York courts seem split as to whether employees owe fiduciary duties to their employers. See Lindberg v. Dow Jones & Co., Inc., 2021 WL 3605621, at *12, n.135 (S.D.N.Y. Aug. 11, 2021) ("Courts have differed in their determination of whether an employee owes its employer a fiduciary duty") (citing Shamrock Power Sales, LLC v. Scherer, 2015 WL 5730339 (S.D.N.Y. Sept. 30, 2015)); Sullivan & Cromwell LLP v. Charney, 2007 WL 1240437, at *5 (Sup. Ct. N.Y. Cnty. 2007)). The parties spend substantial time in their briefs arguing about whether all employees, or only some subset of higher-level employees, owe fiduciary duties to their employers. See (Document No. 21, pp. 9-11); (Document No. 22, pp. 9-11). The parties' arguments are ultimately beside the point, however, as there are clear standards for who owes fiduciary duties to a company. Undoubtedly, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation…[and] when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him." People ex rel. Cuomo v. Coventry First LLC, 886 N.Y.S.2d 671, 675 (N.Y. 2009).

With respect to both Brooks and Drexler, alleged to be the Chief Marketing Officer of Intercontinental and the Branch Manager of the Charlotte office respectively, the undersigned finds that Intercontinental plausibly alleges at this stage of the litigation that they both had a fiduciary relationship with the company. See (Document No. 5, p. 15). Notably, Intercontinental alleges that both Brooks and Drexler were entrusted with "the collection and delivery of [Intercontinental's] confidential information to Movement" in preparation for the potential acquisition by Movement of Intercontinental's direct-to-consumer-lending mortgage division. (Document No. 5, p. 25). Furthermore, Intercontinental alleges that they "carefully orchestrat[ed] a scheme for Movement to steal" the employees in Intercontinental's direct-to-consumer lending division. Id. at p. 27. In furtherance of that effort, Intercontinental alleges that Brooks and Drexler "secretly and purposefully solicit[ed] and induc[ed] [Intercontinental's] Charlotte Branch and other employees to resign from [Intercontinental] and join Movement…by misusing [Intercontinental's] confidential information for Movement's benefit and to [Intercontinental's] detriment." Id. at pp. 40-41.

At this stage, the undersigned finds that Intercontinental has alleged sufficient facts such that it is plausible that both Brooks and Drexler owed fiduciary duties to Intercontinental. Both Brooks and Drexler were entrusted by Intercontinental to facilitate the acquisition process of Intercontinental by Movement through the collection of confidential documents, thereby demonstrating the "high level of confidence and reliance" placed upon Brooks and Drexler to carry out a large-scale corporate acquisition. See Coventry First LLC, 886 N.Y.S.2d at 675. And, "[b]ecause such a relationship is a question of fact, a claim alleging the existence of a fiduciary

duty usually is not subject to dismissal under Rule 12(b)(6)." Frand v. Woldiger, 2019 WL 1897453, at *4 (S.D.N.Y. Apr. 29, 2019) (internal quotations and citations omitted).[4]

Although the remaining elements of a breach of fiduciary duty claim do not appear to be in dispute, nevertheless, the undersigned finds that Intercontinental plausibly alleges facts to support both elements at this stage. The remaining elements, misconduct by the counterclaim defendants and damages, are adequately alleged. See Yukos Capital S.A.R.L., 977 F.3d at 241. The allegations of misconduct against both Brooks and Drexler are that they "secretly and purposefully beg[an] to compete with [Intercontinental] while still employed" by them through "purposefully solicit[ing] and induc[ing] [Intercontinental's] Charlotte Branch and other employees to resign from [Intercontinental] and join Movement." (Document No. 5, pp. 40-41). Furthermore, Intercontinental contends that Brooks and Drexler's misconduct resulted in "substantial economic harm in the form of…damage to its relationships with its valued customers, the continuing loss of its competitive position, loss of market share, and lost profits." Id. at pp. 40-42. The undersigned finds that these allegations are sufficient to state a counterclaim for breach of fiduciary duty against both Brooks and Drexler as each of the elements – the existence of a fiduciary relationship, misconduct by the defendants, and damages – are plausibly pled. Thus, the undersigned respectfully recommends that Brooks and Drexler's motion to dismiss the breach of fiduciary counterclaims be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Matt Drexler And Laura Ashley Brooks' Motion To Dismiss" (Document No. 19) be **DENIED**.

---

[4] Brooks and Drexler argue that they were not officers or directors of Intercontinental, as they were not appointed in accordance with New York law, and that therefore, they do not owe fiduciary duties. See (Document No. 20, pp. 8-9). Given that this question presents factual issues more appropriately resolved at a later stage following discovery, the undersigned will express no opinion on the merits of this argument.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: December 28, 2022

David C. Keesler
United States Magistrate Judge