# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:22-cv-00147-RJC-DCK

MOVEMENT MORTGAGE LLC et al.,      )
     )
        Plaintiffs,      )
     )
          v.      )         <u>Order</u>
     )
INTERCONTINENTAL CAPITAL GROUP,      )
INC.,      )
     )
        Defendant.      )
———————————————————— )

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Matt Drexler and Laura Ashley Brooks (Doc. No. 19) and the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 27). For the reasons below, the M&R is **ADOPTED in part** and the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

No party objects to the M&R's description of this case's factual and procedural background. Accordingly, the Court adopts that description.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A), (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De

novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss is well known. A motion to dismiss brought under Rule 12(b)(6) "'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked under Rule 12(b)(6) will survive if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, and the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration omitted). Additionally, when ruling on a motion to dismiss, a court "should view the complaint in a light most favorable to the plaintiff," *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and it must accept the complaint's factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a court is "not bound to accept

2

as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And at the motion-to-dismiss stage, "[c]ourts cannot weigh the facts or assess the evidence," though "a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014) (emphasis omitted).

## III.    DISCUSSION

This dispute arose when a deal fell apart. Movement Mortgage LLC planned to buy a division of Intercontinental Capital Group, Inc. Compl. ¶ 17, Doc. No. 1. After the parties signed a confidentiality agreement, the deal crumbled, many Intercontinental employees quit and went to Movement, and Intercontinental threatened litigation. *Id.* ¶¶ 18, 26, 32. Though Movement sued first, Intercontinental brought counterclaims against it and two prior Intercontinental employees who left for Movement: Laura Ashley Brooks and Matt Drexler. Answer ¶¶ 85–135, at 35–43, Doc. No. 5.

What matters here are Intercontinental's breach-of-fiduciary-duty claims against Brooks and Drexler. Moving to dismiss those claims under Rule 12(b)(6), Brooks and Drexler argue that under North Carolina law—which they say applies—Intercontinental fails to plead that they owed it a fiduciary duty. Mem. Supp. Mot. Dismiss 4–7, Doc. No. 20. But the M&R concluded that New York law applies and that Intercontinental's allegations establish fiduciary relationships between Intercontinental and Brooks and Drexler. M&R 5–10, Doc. No. 27. Brooks and Drexler object to both determinations. Objs. 3–10, Doc. No. 28. They also argue that, even under New York law, they were not Intercontinental's fiduciaries. *Id.* at 10–11.

### A.    Choice of Law

The parties agree that North Carolina's choice-of-law rules apply. Objs. 3;

Intercontinental's Resp. 4, Doc. No. 29.[1] But they disagree about which rule applies.

Brooks and Drexler claim that North Carolina's *lex loci* test applies. Objs. 4, 8; *see SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 343 (N.C. 2020) (explaining that, under the *lex loci* test, courts apply "the substantive law of the state where the injury or harm was sustained or suffered," which is usually "the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place" (internal quotation marks omitted)). Since the alleged breaches of fiduciary duty occurred in North Carolina, Answer ¶¶ 58, 63–64, 117, 125, at 27–29, 40–41, that state's substantive law would apply under the *lex loci* test. But Intercontinental argues that a different conflict-of-laws rule applies: the internal-affairs doctrine. Resp. 4; *see Bluebird Corp. v. Aubin*, 657 S.E.2d 55, 63 (N.C. Ct. App. 2008) (stating that courts "look to the [s]tate of a business' incorporation for the law" when a dispute involves "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"). Intercontinental was incorporated in New York. Answer ¶ 8, at 15. So under the internal-affairs doctrine, New York's substantive law would govern Intercontinental's breach-of-fiduciary-duty claims.

Because "the internal affairs doctrine only applies to officers, directors, and shareholders," it does not apply to Intercontinental's claim against Drexler. *Env't Holdings Grp., LLC v. Finch*, 2022 WL 1538787, at *7 (N.C. Super. Ct. May 16, 2022); *see also Bluebird*, 657 S.E.2d at 63 (stating that courts apply the internal-affairs doctrine when a claim involves "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); Restatement (Second) of Conflict of Laws § 302 cmt. e (1971) ("Uniform

---

[1] *See* Compl. ¶ 7, Doc. No. 1 (invoking diversity jurisdiction); Answer ¶ 15, at 16, Doc. No. 5 (same); *Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules.").

treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law.").[2] Intercontinental does not adequately plead that Drexler was an officer, director, or shareholder of the corporation. Rather, its allegations establish that he was an "employee." *Env't Holdings*, 2022 WL 1538787, at *7.

Intercontinental does not allege that Drexler was an officer, director, or shareholder. Rather, it states that he was a "Branch Manager." Answer ¶ 123, at 41. Intercontinental's Response claims that Drexler "served in a senior-level and key managerial role" in which he "oversaw and built [Intercontinental's] business operations at a regional flagship location and supervised over 100 other employees." Resp. 6–7. But such a role did not make him an officer, director, or shareholder. *See, e.g.*, *Env't Holdings*, 2022 WL 1538787, at *2, *7 (concluding that "a Senior Project Manager" who "had substantial control and authority over the entire operation of [his employer's] Richmond projects" and who "overs[aw] all field personnel in Richmond" was a "mere employee[]"—not "an officer, director, or shareholder"—and so did not trigger the application of the internal-affairs doctrine (alteration omitted)).

The *lex loci* test applies to Intercontinental's claim against Drexler. North Carolina courts apply that test to determine the substantive law that will govern tort claims, *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 343 (N.C. 2020) ("[T]his Court's jurisprudence favors the use of the *lex loci* test in cases involving tort or tort-like claims."), including breach-of-fiduciary-duty claims, *Env't Holdings*, 2022 WL 1538787, at *7; *Am. Air Filter Co. v. Price*, 2017 WL 2797794, at *6 (N.C.

---

[2] *See Islet Scis, Inc. v. Brighthaven Ventures, LLC*, 2017 WL 129944, at *4–5 (N.C. Super. Ct. Jan. 12, 2017) (referencing Restatement (Second) of Conflict of Laws § 302 when applying North Carolina's internal-affairs doctrine); *Edgar v. MITE Corp.* 457 U.S. 624, 645 (1982) (relying on § 302's description of the doctrine); *Bluebird Corp. v. Aubin*, 657 S.E.2d 55, 63 (N.C. Ct. App. 2008) (applying *Edgar*'s formulation of the doctrine).

Super. Ct. June 26, 2017). Because Drexler's alleged breach of fiduciary duty occurred in North Carolina, that state's substantive law applies to the claim against him.[3]

However, the internal-affairs doctrine does apply to Intercontinental's claim against Brooks. Intercontinental alleges that Brooks, who had the title "Chief Marketing Officer," was "an officer." Answer ¶¶ 115–116, at 39–40.[4] If Brooks was an officer, then Intercontinental's claim concerns a "matter[]" that is "peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Bluebird*, 657 S.E.2d at 63; *see* Restatement (Second) of Conflict of Laws § 302 cmt. e (1971) ("Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law."). Thus, the substantive law of New York governs Intercontinental's claim against Brooks.

## B.    Existence of Fiduciary Relationships

Intercontinental fails to adequately allege that Drexler owed it a fiduciary duty under North Carolina law. *Cf. Governors Club, Inc. v. Governors Club Ltd. P'ship*, 567 S.E.2d 781, 786 (N.C. Ct. App. 2002) ("A claim for breach of fiduciary duty requires the existence of a fiduciary duty."). North Carolina courts "have consistently held that an employer-employee relationship is not a fiduciary one, even where the employee has significant management authority, absent some

---

[3] Intercontinental relies on *Worley Claims Services, LLC v. Jefferies*, 429 F. Supp. 3d 146 (W.D.N.C. 2019). But in that case, the Court applied the internal-affairs doctrine "with the agreement of both parties." 429 F. Supp. 3d at 159.

[4] Brooks and Drexler attach a document to their Objections that was apparently filed by Intercontinental with the State of North Carolina. *See* Exhibit 1, Doc. No. 28-1; Objs. 10 n.4, Doc. No. 28. The document lists only one officer of Intercontinental: Dustin DiMisa. *Id.* Although the Court "may consider matters of public record" when "deciding Rule 12(b)(6) motions," *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996), it is unclear what the document is, where it came from, or how much weight it should be given. Brooks and Drexler do not provide those details via a declaration or otherwise. Therefore, the question of whether Brooks was actually an officer of the corporation will be resolved at a later stage. At this stage, Intercontinental plausibly alleges that she was.

6

allegation that the employee exercised dominance and control over his employer." *Am. Air Filter*, 2017 WL 2797794, at *9; *see also Dalton v. Camp*, 548 S.E.2d 704, 708 (N.C. 2001) (stating that "the broad parameters" of the test for determining whether a fiduciary relationship exists "have been specifically limited in the context of employment situations").

Here, Intercontinental does not allege that Drexler exercised dominance and control over the corporation. Rather, it alleges that he was a "Branch Manager" who "had access to and was entrusted with voluminous confidential information." Answer ¶ 123, at 41. It also alleges that he, while still employed by Intercontinental, "beg[an] to compete" with the company by "soliciting and inducing" its employees to "resign . . . and join Movement" and by making "knowingly false statements" to Intercontinental's employees. *Id.* ¶ 125, at 41. But such allegations do not show that Drexler, as a manager, "exerted domination or influence over [Intercontinental]," so Intercontinental's allegations do not establish "the extraordinary or special type of employer-employee relationship that gives rise to a fiduciary duty." *DSM Dyneema, LLC v. Thagard*, 2015 WL 2194436, at *6 (N.C. Super. Ct. May 12, 2015); *see also Reichhold Chems., Inc. v. Goel*, 555 S.E.2d 281, 292 (N.C. Ct. App. 2001) ("A managerial position alone does not demonstrate the requisite domination and influence on the other required to create a fiduciary obligation." (internal quotation marks omitted)); *Dalton*, 548 S.E.2d at 708 (holding that an employee's "managerial duties," which required "a certain level of confidence [to be] reposed in him," were "inadequate" to establish a fiduciary duty).

However, Intercontinental does adequately allege that Brooks owed it a fiduciary duty under New York law. As explained above, Intercontinental claims that Brooks was "an officer" of the corporation. Answer ¶ 116, at 40. In New York, "directors and officers of corporations, in the performance of their duties, stand in a fiduciary relationship to their corporation." *Yu Han Young*

7

*v Chiu*, 853 N.Y.S.2d 575, 576 (N.Y. App. Div. 2008). Thus, Intercontinental states a viable breach-of-fiduciary-duty claim against Brooks.[5]

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.    The M&R (Doc. No. 27) is **ADOPTED in part**.

2.    The Motion to Dismiss filed by Brooks and Drexler (Doc. No. 19) is **GRANTED in part** and **DENIED in part**. Specifically, it is **GRANTED** as to Intercontinental's breach-of-fiduciary-duty claim against Drexler. It is otherwise **DENIED**.


Signed: March 9, 2023

Robert J. Conrad, Jr.
United States District Judge

---

[5] Additionally, Intercontinental adequately alleges that Brooks, as an officer, owed it a fiduciary duty under North Carolina law. Under the law of that state, "[a] corporate officer owes a fiduciary duty to the corporation." *AECOM Tech. Corp. v. Keating*, 2012 WL 370296, at *2 (N.C. Super. Ct. Feb. 6, 2012) (first citing *Pierce Concrete, Inc. v. Cannon Realty & Constr. Co.*, 335 S.E.2d 30, 31–32 (N.C. Ct. App. 1985); then citing *Meiselman v. Meiselman*, 307 S.E.2d 551 (N.C. 1983)); *see also Addison Whitney, LLC v. Cashion*, 2017 WL 2506604, at *4–6 (N.C. Super. Ct. June 9, 2017) (evaluating a breach-of-fiduciary-duty claim asserted against several "*officers*, not *employees*," and stating that "[t]he Court is unaware of any case dismissing a breach of fiduciary duty claim against individuals with [officer-level] titles and authority at the 12(b)(6) stage").