IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-147-RJC-DCK

| | |
|---|---|
| MOVEMENT MORTGAGE, LLC, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INTERCONTINENTAL CAPITAL GROUP, INC., )<br>)<br>Defendant. )<br>_____ )<br>)<br>INTERCONTINENTAL CAPITAL GROUP, INC., )<br>)<br>Counterclaim Plaintiff, )<br>)<br>v. )<br>)<br>MOVEMENT MORTGAGE, LLC, MATT )<br>DREXLER, and LAURA ASHLEY BROOKS, )<br>)<br>Counterclaim Defendants. )<br>)<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Certain Individual Plaintiffs' Motion For Voluntary Dismissal Without Prejudice" (Document No. 38). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be granted.

# I. BACKGROUND

Movement Mortgage, LLC ("Movement" or "Plaintiff") and forty-eight (48) individuals[1] ("Individual Plaintiffs") (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint For Declaratory Relief" (Document No. 1) (the "Complaint") filed on April 6, 2022. Individual Plaintiffs are former employees of Intercontinental Capital Group, Inc. ("ICG" or "Defendant"). (Document No. 1, p. 2).

Plaintiff Movement is "a national leader in the mortgage loan origination industry." (Document No. 1, p. 4). Defendant ICG is in " a relationship-driven business line like Movement," and "has a business line focused on what is referred to in the industry as direct-to-consumer lending." (Document No. 1, p. 5). ICG's "model is focused on sending marketing materials directly to potential customers who then contact ICG about a potential home purchase or refinance." Id.

The Complaint notes that Movement and ICG engaged in discussions between November 2021 and February 2022, "about Movement possibly purchasing ICG's direct-to-consumer line of business." (Document No. 1, p. 5). Plaintiffs contend that ICG "refused to provide Movement with basic financial and performance data necessary for Movement to evaluate ICG's direct-to-consumer business." (Document No. 1, p. 6). In addition, the Complaint avers that "business conditions at ICG had very rapidly deteriorated" during late 2021, forcing ICG "to lay off

---

[1] Individual Plaintiffs include: Justin Wiesert, Isaac Alexander, Preston Spence, David Schweit, Carter Jones, Coties Cuthbertson, Dan Toth, Ryan Spanich, Daniel Formeck, Joseph Perez, Breanna Bryce, Melanie Blake, Makenna Orlando, Dana French, Eric Ricono, Matt McCallan, Michael Arrowood, Zack Choate, Jack Lutz, Brandon Queen, Joey Philyaw, David Anderson, Alex Furtado, Amber-Lynn Stinson, Chris Chang, Dallas Joyce, Joshua Hefferman, Kevin Shannon, Justin Griggs, Malik Constantine, Jendy Rodriguez, Mariano Doble, Tyler Provance, Josh Katz, Brandon Rose, Cordelia Starnes, Andrew Smith, Matt Drexler, Elijah Fincher, Laura Ashley Brooks, Christopher Trotta, Brian Ranson, Kevin Lowther, David Stelz, Daniel Nuckolls, Natalie Hitselberger, Kyle Nachtergaele, and Christian Simmons. (Document No. 1, pp. 1-2).

approximately half of its employees and to shutter most of its offices besides its Charlotte, North Carolina branch." Id. In mid-February 2022, the parties' negotiations were terminated by ICG. (Document No. 1, p. 7).

According to Plaintiffs, "[a]bandoning the sinking ship, a number of ICG's employees decided to leave ICG and were ultimately hired by Movement." Id. As a result, the Complaint alleges the following:

> On March 28 and 29, 2022, ICG sent a letter to each Plaintiff unequivocally stating that ICG will be filing suit against each of them to include claims for allegedly breaching, inducing others to breach, and/or tortiously interfering with the Agreements between the Individual Plaintiffs and ICG, as well as the misappropriation of ICG's confidential information. . . . By virtue of these claims, ICG intends to enforce the forum selection clauses contained in the Agreements against all Plaintiffs (without regard as to whether any particular Plaintiff is or is not a signatory to an Agreement).

(Document No. 1, p. 8).

Plaintiffs' Complaint seeks a declaratory judgment that the forum selection clauses included in the Individual Plaintiffs' employment agreements (the "Agreements") with Defendant ICG are void to the extent they require or permit litigation to occur outside of North Carolina. (Document No. 1, pp. 9-10) (citing Document Nos. 1-2 through 1-48); see also (Document No. 39, p. 2).

"Intercontinental Capital Group, Inc.'s Answer, Affirmative Defenses, And Counterclaim" (Document No. 5) was filed on May 3, 2022. In its defense, ICG first asserts that "Plaintiffs' claim for declaratory judgment is barred by the doctrine of mootness." (Document No. 5, p. 12). ICG states that it "reserves its right to initiate arbitrations against any Individual Plaintiffs pursuant to their respective mandatory arbitration agreements," but "**represents that it will initiate any such arbitrations in the State of North Carolina**." Id. (emphasis added). As such, ICG contends

3

"there is no actual or immediate controversy with this Court's jurisdiction that it can or should decide in connection with Plaintiffs' Complaint for Declaratory Judgment." Id.

In addition, ICG asserts counterclaims against Movement, Matt Drexler ("Drexler"), and Laura Ashley Brooks ("Brooks"). (Document No. 5, p. 12). Drexler was employed as Branch Manager of ICG's Charlotte Branch until his resignation on February 25, 2022; and Brooks was employed as ICG's Chief Marketing Officer, until her resignation on March 1, 2022. (Document No. 5, p. 15). ICG contends that "[t]his case is a textbook example of a company (Movement) illegally stealing what it could not buy." (Document No. 5, p. 13). According to ICG, after negotiations between the parties regarding the potential purchase of ICG's direct mortgage loan division were terminated, "Movement engaged in a coordinated and deceptive scheme, assisted by certain then-current ICG officers and employees, to misappropriate nearly all of ICG's consumer direct division, the effect of which was to destroy ICG's valuable consumer direct business." Id.

ICG's counterclaims include: (1) breach of contract (against Movement); (2) breach of contract (against Drexler); (3) tortious interference with contract (against Movement); (4) breach of fiduciary duty (against Brooks); (5) breach of fiduciary duty (against Drexler); and (6) unfair and deceptive trade practices (against Movement). (Document No. 5, pp. 35-43).

"Matt Drexler And Laura Ashley Brooks' Motion To Dismiss" (Document No. 19) was filed on June 10, 2022, seeking to dismiss the breach of fiduciary duty claims against both Drexler and Brooks. The undersigned issued a "Memorandum And Recommendation" (Document No. 27) on December 28, 2022, recommending that the motion to dismiss be denied. On March 9, 2023, the Honorable Robert J. Conrad, Jr. adopted the M&R in part, finding that the fiduciary duty claim against Drexler should be dismissed, and that the fiduciary duty claim against Brooks should

survive. (Document No. 30). Judge Conrad then issued a "Pretrial Order And Case Management Plan" (Document No. 34) on April 19, 2023.

"Certain Individual Plaintiffs' Motion For Voluntary Dismissal Without Prejudice" (Document No. 38) and its "Memorandum In Support…" (Document No. 39) were filed on July 24, 2023, and seek dismissal pursuant to Fed.R.Civ.P. 41(a)(2). The moving "Certain Individual Plaintiffs" include the previously identified Individual Plaintiffs – except for Drexler and Brooks –"who do not seek relief via the instant motion." (Document No. 39, pp. 1-2). The crux of Certain Individual Plaintiffs' motion for voluntary dismissal of their request for declaratory judgment is that ICG has subsequently clarified that it will not bring any claim against any of the Individual Plaintiffs outside of North Carolina, and that ICG has not asserted any counterclaims against Certain Individual Plaintiffs. (Document No. 39, p. 2); see also (Document No. 5, p. 12).

ICG's "…Response…" (Document No. 42) was filed on August 7, 2023. ICG opposes the voluntary dismissal unless the Court sets "conditions that the Individual Plaintiffs substantively respond and produce materials responsive to ICG's outstanding Rule 34 requests and that the parties meet and confer to develop a revised discovery schedule." (Document No. 42, pp. 2, 16). A "Reply In Support…" (Document No. 43) was filed on August 14, 2023. Certain Individual Plaintiffs oppose ICG's discovery demands as "excessively broad and unreasonably burdensome" and "**exorbitantly** expensive," especially for a "single, narrow claim against ICG relating to the enforceability of the forum selection clause." (Document No. 43, pp. 2-3).

The pending "…Motion For Voluntary Dismissal…" has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.[2]

---

[2] The undersigned notes that three motions filed by Plaintiff Movement are also pending: "…Motion To Compel Discovery" (Document No. 41); "…Motion To Enforce Subpoena Directed To Third-Party…" (Document No. 49); and "…Motion For Sanctions…" (Document No. 57). These motions will be addressed by the Court in a separate Order.

## II.  STANDARD OF REVIEW

According to Fed.R.Civ.P. 41, a Plaintiff "may dismiss an action without a court order by filing:  (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment;  or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed.R.Civ.P. 41(a)(1)(A).  Otherwise, "**an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper**."  Fed.R.Civ.P. 41(a)(2) (emphasis added).

"A plaintiff's motion under Rule 41(a)(2) for dismissal without prejudice should not be denied absent substantial prejudice to the defendant."  Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986).

> The purpose of Rule 41(a)(2) is "to allow voluntary dismissals unless the parties will be unfairly prejudiced." Howard v. Inova Health Care Servs., 302 F. App'x 166, 178 (4th Cir. 2008) (citation omitted).  In determining whether to allow a motion to dismiss without prejudice, the Court should consider such factors as "[1] the opposing party's effort and expense in preparing for trial, [2] excessive delay and lack of diligence on the part of the movant, and [3] insufficient explanation of the need for a voluntary dismissal, as well as [4] the present stage of litigation."  Id. at 179 (citing Miller v. Terramite Corp., 114 F.App'x 536, 540 (4th Cir. 2004) (internal quotation marks omitted)).

5-Star Athlete Dev., LLC v. City of Shelby, N. Carolina, No. 1:21-CV-323-MR-WCM, 2022 WL 3136957, at *2 (W.D.N.C. Aug. 5, 2022).

"The decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion."  Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987) (citing McCants v. Ford Motor Co., 781 F.2d 855, 857 (11th Cir. 1986) and Kenrose Mfg. Co. v. Fred Whitaker Co., 512 F.2d 890, 895 (4th Cir.1972).

## III. DISCUSSION

The undersigned is persuaded that "Certain Individual Plaintiffs' Motion For Voluntary Dismissal Without Prejudice" should be allowed. In short, the undersigned finds that Defendant ICG will suffer minimal prejudice by the dismissal of the forty-six (46) Certain Individual Plaintiffs – who brought this action seeking declaratory judgment solely on the issue of whether a forum selection clause is enforceable. (Document No. 1); see also (Document No. 38, pp. 1-2).

As noted above, Defendant ICG has stated in its "…Answer, Affirmative Defenses, And Counterclaim" that it "reserves its right to initiate arbitrations against any Individual Plaintiffs pursuant to their respective mandatory arbitration agreements," but "will initiate any such arbitrations **in the State of North Carolina**." (Document No. 5, p. 12) (emphasis added). As such, ICG acknowledges that there is "no actual or immediate controversy within this Court's jurisdiction that can or should be decided in connection with Plaintiffs' Complaint for Declaratory Judgment." Id.

Moreover, Defendant ICG does not oppose the pending request for voluntary dismissal; instead,

> ICG requests that this Court exercise its broad discretion to impose reasonable conditions on voluntary dismissal sufficient to protect ICG from undue prejudice. Specifically, ICG requests that the Dismissal Motion only be granted on the conditions that the Individual Plaintiffs substantively respond and produce materials responsive to ICG's outstanding Rule 34 requests, and that the parties meet and confer to develop a revised discovery schedule and plan to account for the Individual Plaintiffs' dismissal as parties in the action.

(Document No. 42, p. 2); see also (Document No. 42, pp. 11-12)("ICG does not ask this Court to deny the Dismissal Motion….").

Certain Individual Plaintiffs' persuasive application of the four factors identified in the standard of review, *and* ICG's non-opposition to dismissal, support granting dismissal. (Document No. 39, pp. 7-10);  see also 5-Star Athlete Dev., LLC, 2022 WL 3136957, at *2.  Thus, the only remaining question is what, if any, conditions to place on the voluntary dismissal.

> To avoid unfair prejudice, the district court is permitted "to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from the dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant."

Rubicon Research Private Ltd. v. Kartha Pharm. Inc., No. 3:21-CV-129-MOC-DCK, 2022 WL 275748, at *2 (W.D.N.C. Jan. 28, 2022) (quoting Davis, 819 F.2d at 1273).

The pending motion for voluntary dismissal notes that ICG's "…First Requests For Production To Certain Individual Plaintiffs" advances "38 separate document requests to each of the Certain Individual Plaintiffs."  (Document No. 39, p. 30) (citing Document No. 40-1).  ICG's "…Second Requests For Production To Individual Plaintiffs" adds one more request:  "the immediate return of any and all laptop or other computers issued or provided by ICG to You in connection with Your employment at ICG." (Document No. 40-3, p. 7).  Certain Individual Plaintiffs suggest that ICG's Rule 34 requests for discovery "could easily be repurposed as Rule 45 subpoenas (a fact ICG seems to recognize in its June 27 letter), discounting any inference of prejudice arising therefrom."  (Document No. 39, p. 8) (citing Crocker v. Brown, 1:16-CV-005-MR-DLH, 2016 WL 7404719, at *2 (W.D.N.C. Dec. 21, 2016)).

In response, Defendant ICG notes the Court's "broad discretion to impose conditions on voluntary dismissal to protect ICG from undue prejudice" and urges the Court to only allow dismissal "on the conditions that the Individual Plaintiffs substantively respond and produce materials responsive to ICG's outstanding Rule 34 requests and that the parties meet and confer to

develop a revised discovery schedule." (Document No. 42, p. 2). ICG contends that it would be "more time consuming, burdensome, and expensive" for them to "prepare and re-serve over 40 new Rule 45 subpoenas." Id.

Among its concerns, ICG asserts that it recognized from the outset "that discovery from the Individual Plaintiffs' personal cell phones, email accounts and devices would contain critical information evidencing Counter-Defendants' unlawful conduct." (Document No. 42, p. 3). Moreover, "ICG sent document preservation demand letters to all Plaintiffs on March 28-29, 2022." Id.

ICG still seeks "substantive responses and production of materials" for each of its thirty-nine (39) requests for production from all forty-eight (48) Individual Plaintiffs. (Document No. 42, p. 16); see also (Document Nos. 40-2, and 40-3). The parties, including Individual Plaintiffs, agreed to respond to up to "20 requests for admission and 20 interrogatories." (Document No. 42, p. 15) (citing Document No. 34, p. 2). The "Pretrial Order…" does not, however, appear to set any expectation for requests for production. See (Document No. 34, p. 2). ICG also seeks confirmation that "additional computers responsive to the Second RFPs either do or do not exist" and that the parties be directed to "meet and confer regarding a revised discovery schedule and plan." (Document No. 42, p. 16).

In reply, Certain Individual Plaintiffs argue that they are "just witnesses in this case" and suggest that ICG can obtain the documents it seeks through Plaintiffs/Counterclaim Defendants Movement, Drexler, and Brooks; therefore, Certain Individual Plaintiffs should be unconditionally dismissed from this case. (Document No. 43, pp. 3, 6). "The vast majority of the document requests issued by ICG to the Individual Plaintiffs seeks documents and data that are almost certainly in the hands of Movement Mortgage." (Document No. 43, p. 7). In conclusion,

9

Certain Individual Plaintiffs argue that ICG retains the ability to, and should, request information from them via Rule 45, instead of Rule 34.

Based on the parties' arguments, the undersigned will recommend that this Court, in its discretion, place limited conditions on Certain Individual Plaintiffs' voluntary dismissal to offset potential prejudice to Defendant ICG. Specifically, Certain Individual Plaintiffs should be required to respond to the ICG's RFPs as follows:

> **1**. All Certain Individual Plaintiffs shall provide documents sufficient to show the personal email address, personal cell phone numbers, or other personal devices or personal contact information at which Movement communicated with each Certain Individual Plaintiff; or confirm in writing that they did not receive any communication from Movement. See (Document No. 40-2, p. 22, First RFP ¶ 22. Certain Individual Plaintiffs may redact any allegedly privileged information included with such documents.
>
> **2**. All Certain Individual Plaintiffs shall provide written confirmation as to whether they retained any computer(s) issued or provided by ICG in connection with their employment with ICG, after leaving the employment of ICG; and if so, confirm whether such computer(s) have been returned to ICG. See (Document No. 40-3, p. 7, Second RFP ¶ 1). Any such ICG computer(s) still in the possession of Certain Individual Plaintiffs shall be promptly returned, unless otherwise agreed by the parties.
>
> **3**. In addition, remaining parties in this action shall meet and confer regarding the status of discovery and file proposed revised case deadlines, **within**

**two (2) weeks** of the Court's final decision on the instant "…Motion For Voluntary Dismissal Without Prejudice" (Document No. 38).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Certain Individual Plaintiffs' Motion For Voluntary Dismissal Without Prejudice" (Document No. 38) be **GRANTED** with certain conditions as set forth above.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 8, 2024

David C. Keesler
United States Magistrate Judge